**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**Eastern Division**

| | | |
|---|---|---|
| CAROLINE T. RETZIOS, | ) | |
| | ) | |
| *Plaintiff,* | ) | |
| | ) | |
| v. | ) | Civil Action No: 1:23-cv-3338 |
| | ) | Jury Trial Demanded |
| EPIC SYSTEMS CORPORATION, | ) | |
| | ) | |
| *Defendant.* | ) | |

## <u>COMPLAINT IN LAW</u>

NOW COMES Plaintiff, Caroline T. Retzios, by and through her attorney, Susan S. Barron with the Law Office of Susan S. Barron PC, complaining of Defendant, Epic Systems Corporation as follows:

1. This is an action brought to remedy Epic Systems Corporation's (hereinafter referred to as "Defendant") business strategy and pattern of discrimination against employees who requested religious and/or medical accommodations from Defendant's COVID-19 vaccine mandate and who were wrongfully discharged in retaliation of their noncompliance with Defendant's vaccine mandate.

2. Rather than complying with its obligations under Title VII of the Civil Rights Act of 1964 ("Title VII") and the Americans with Disabilities Act ("ADA"), Defendant responded by informing their employees that they would be terminated from their employment if they did not comply with Defendant's vaccine mandate.

3. Defendant's actions left Plaintiff, Caroline Retzios (hereinafter referred to as "Plaintiff") with an unimaginable decision of either taking the COVID-19 vaccine, at the expense of her

religious beliefs and her health, or losing her livelihood. In so doing, Defendant has violated Title VII and the ADA by failing to engage in the interactive process and provide reasonable accommodations, and by so, retaliating against employees who engaged in protected activity.

## THE PARTIES

4.  Plaintiff is a resident of the Village of Glenview, Illinois.

5.  Plaintiff began her employment with Defendant at their Verona, Wisconsin location on or about August 3, 2020.

6.  While employed by Defendant, Plaintiff's last employment title was one of Project Manager while at the project assignment of Oklahoma University Health, Oklahoma City, Oklahoma.

7.  On September 30, 2021, Plaintiff lost all access to her work accounts and was terminated from her employment with Defendant because Defendant denied her religious and medical exemption from Defendant's COVID -19 vaccine mandate.

8.  Defendant is an American privately held healthcare software company.

9.  Defendant primarily develops, manufactures, licenses, supports, and sells a proprietary electronic medical record software application, known in whole as 'Epic' or an Epic EMR. The company's healthcare software is centered on its Chronicles database management system.

10. Defendant's applications support functions related to patient care, including registration and scheduling; clinical systems for doctors, nurses, emergency personnel, and other care providers; systems for lab technologists, pharmacists, and radiologists; and billing systems for insurers. MyChart is used in the USA and other countries to access doctors' records and for billing purposes. It is used by private hospitals nationwide and 150 million patients across the United States.

2.

## JURISDICTION AND VENUE

11. This Court has jurisdiction over this case pursuant to 28 U.S.C §§ 1331, 1343, and 42 USC § 2000e-5(f)(3).

12. Defendant has residency in Illinois because it does extensive business all throughout the state of Illinois, including but not limited to Cook County and Lake County in the Northern District of Illinois.

13. For purposes of venue, because of Defendant's extensive business dealings and residency in Illinois, its personal jurisdiction is therefore subject to the United States District Court of Illinois, the Northern District.

14. United States District Court, Northern District of Illinois has jurisdiction in this matter pursuant to 28 US C §1391 (b) (1)(3) and (c) (2).

## FACTUAL ALLEGATIONS COMMON TO ALL COUNTS

15. On October 29, 2019, Plaintiff was hired by Defendant as a Project Manager and given a start date of August 3, 2020.

16. On March 15, 2021 Defendant announced that vaccines were available to employees and surveyed employees for interest in getting vaccinated.

17. Plaintiff responded to Defendant's survey by selecting she was not interested in taking the COVID-19 vaccine.

18. Defendant added this information to Plaintiff's internal employment file.

19. On May 14, 2021, Defendant sent an email only inviting new staff who were vaccinated to attend the May 17, 2021 Staff Meeting in person.

20. On May 21, 2021 Defendant announced that US based staff would return to the office for a hybrid work schedule starting July 17, 2021.

3.

21.  On June 22, 2021 Plaintiff was asked by the Defendant to either disclose her vaccination information with her officemate or move to a new office.

22.  On June 24, 2021 Defendant sent emails to all employees outlining different rules for vaccinated versus unvaccinated staff, which included rules that the unvaccinated staff could not enter certain buildings on the campus. Plaintiff was amongst those unvaccinated staff who was prohibited from having access to certain buildings of Defendant.

23. On June 29, 2021 the Defendant only invited the vaccinated staff members to attend  the new staff course identified as "Corporate Philosophy". Plaintiff was excluded because she was not vaccinated.

24.  Defendant 's COVID team sent another email on August 2, 2021 to all  staff that were not identified and listed as being vaccinated.  The email stated that medical and religious exemptions would be reviewed and discussed individually.

25. On or about August 9, 2021, Ms.  Beth Henry, one of Defendant's HR managers, called Plaintiff and left her a message inquiring about her vaccination status.

26. On August 13, 2021, Ms.  Henry sent an  email asking Plaintiff to either provide her with an updated vaccination status or request a religious or medical exemption from Defendant's COVID-19 vaccine mandate.

27. On or about August 16, 2021,  Plaintiff replied to Ms. Henry's August 13, 2021 email and requested a form for a religious exemption from Defendant's COVID-19 vaccine mandate.

28. Defendant sent an email blast to all employees on August 17, 2021 regarding Defendant 's upcoming event, Users Group Meeting (UGM) which specifically stated that in order to participate in UGM, the staff person must be vaccinated.

29.  Defendant excluded any options for the unvaccinated staff  to take buses or shuttles

4.

to the Users Group Meeting.

30. As of August 17, 2021, Defendant's COVID-19 vaccine mandate was not in effect.

31. On August 18, 2021, Plaintiff emailed her religious exemption from Defendant's COVID-19 vaccine mandate to Beth Henry, Defendant's representative.

32. On August 20, 2021, Jennifer Peterson, one of Defendant's HR managers, called Plaintiff to inform her that an accommodation for her religious exemption would be an undue burden to the Company.

33. Neither Jennifer Peterson nor any of Defendant's representatives ever met with Plaintiff to discuss her sincerely held religious belief that she held as an Eastern-Rite Orthodox Christian.

34. Neither Jennifer Peterson nor any of Defendant's representatives ever met with Plaintiff to discuss any possible accommodations for her sincerely held religious beliefs such as: 1.)Plaintiff keeping her current assignment with University of Oklahoma Health, since it did not require her to be vaccinated; 2.) testing before travel to customers; 3.)a list of Defendant's customers who did not require the vaccine if for some reason reassignment was necessary; 4.) assignment to those customers who did not require the vaccine mandate; and 5.) for those customers who required the vaccine for Plaintiff to submit to the customers directly her religious exemption as many hospital facilities were accepting religious exemptions for the COVID-19 vaccine.

35. Neither Jennifer Peterson nor any of Defendant's representatives ever met with Plaintiff to discuss the fact that her current primary assignment at the time was with Defendant's customer, the University of Oklahoma Health, Oklahoma City, Oklahoma and that this assignment was a 1 ½ to 2 year project and that the University of Oklahoma did not require the

5.

COVID-19 vaccine so there was no accommodation necessary from Defendant's COVID-19 vaccine mandate for Plaintiff to continue work.

36. Plaintiff was fulfilling all of her duties at the University of Oklahoma Health and there were no conflicts with Defendant's customer, the University of Oklahoma Health.

37. Furthermore, neither Defendant nor its customer, University of Oklahoma Health had to make ANY accommodations so as to allow Plaintiff to perform her daily job requirements for the University of Oklahoma Health.

38. On August 23, 2021, Plaintiff emailed Jennifer Peterson to confirm that Defendant was not going to accept her religious exemption nor meet with her to discuss her sincerely held religious beliefs that prevented her from getting the Defendant's COVID-19 vaccine mandate.

39. Jennifer Peterson reiterated that it would be an undue hardship for Defendant to provide Plaintiff with a religious exemption from Defendant's COVID-19 vaccine mandate.

40. On or about August 30, 2021, Plaintiff was offered by her Secondary Team Lead person, Christine Davidsaver, a staff promotion with Defendant as a solo Application Manager on an enterprise installation, to which Plaintiff verbally accepted and was told by Christine Davidsaver that she would reach out to her with further staffing instructions.

41. The following day Christine Davidsaver informed Plaintiff that Defendant's HR contacted her to inform her that Defendant would not accept Plaintiff's religious exemption and the job promotion was no longer available to Plaintiff because of her COVID -19 vaccination status.

42. In that same conversation, Christine Davidsaver asked Plaintiff to set an employment end date no later than September 30, 2021.

43. On September 1, 2021, Plaintiff informed both Christine Davidsaver and Jennifer

6.

Peterson that she was not going to quit her employment with Defendant, that she loved the work she was doing at Epic, that she was doing her work well and that she was not getting the COVID-19 vaccine because of her religious beliefs .

44. Jennifer Peterson,  Defendant's representative responded by informing Plaintiff that she would be terminated from her employment with Defendant on September 30, 2021.

45. On September 2, 2021 Plaintiff contacted Jennifer Peterson once again and asked her to explain what the undue burden was for Defendant to accommodate Plaintiff's sincerely held religious beliefs.

46. Plaintiff further inquired from Defendant what steps it took to determine that her religious  accommodation should be denied considering that Defendant's  customer that she was currently assigned to did not require vaccination in order to work.

47.  On September 9, 2021, numerous coworkers on Plaintiff's project team reached out to her and asked what her transition plan was for when she was going to quit her employment with Defendant.

48. Plaintiff never discussed with any of her coworkers her decision to not get the vaccine and that her employment with Defendant was being involuntarily terminated.

49.  The coworkers that Defendant disclosed the falsity that Plaintiff was quitting her job included the Implementation Director on the University of Oklahoma Health Project, Brooke Cunningham, and her two direct coworkers on the project.

50. The next day Brooke Cunningham, Implementation Director on the University of Oklahoma Health customer assignment, called Plaintiff to ask directly if she was unvaccinated

51. Brooke Cunningham stated that she would have to call the University of Oklahoma Health to get clearance for Plaintiff's onsite trip scheduled for September 14-16 which was

7.

planned well in advance.

52.  Never before did Plaintiff need to get clearance from University of Oklahoma Health before Defendant's denial of Plaintiff's sincerely held religious beliefs from the COVID-19 vaccine mandate.

53.  Brooke Cunningham confirmed that no other Defendant's employees were ever asked or required to provide COVID-19 vaccination proof in the past prior to Defendant's denial of Plaintiff's religious accommodation request.

54.  On September 14, 2021 Plaintiff emailed Beth Henry, one of Defendant's HR managers to inform her that Plaintiff has the COVID-19 antibodies, Plaintiff gave Beth Henry her antibody test results and Jennifer Peters communicated through email that Plaintiff's medical condition would be included in her medical records for her employment with Defendant.

55.  Plaintiff was onsite at the University of Oklahoma Health from September 14-16, 2021 which neither Defendant nor its customer, the University of Oklahoma Health, had to make any additional accommodations for Plaintiff because she was not vaccinated to make this onsite trip.

56.  On September 30, 2021 Plaintiff was sent a departure procedure email from Defendant's representative. By 11 PM CST, Plaintiff lost access to all her work accounts and her employment was involuntarily terminated with Defendant.

## COUNT 1
### Violation of Title VII, U.S.C. 42 § 2000e, et seq.
### Religious Discrimination- failure to accommodate

57.  Plaintiff restates and realleges foregoing paragraphs 1-56 as if set forth fully herein.

58.  Plaintiff's sincerely held religious belief precluded her from receiving Defendant's

8.

COVID-19 vaccination.

59. On or about August 18, 2021, Plaintiff submitted to Defendant's representative her religious exemption request from taking Defendant's COVID-19 vaccine mandate.

60. On August 18, 2021, Plaintiff emailed her religious exemption request from taking Defendant's COVID-19 vaccine mandate to Beth Henry, Defendant's representative.

61. On August 20, 2021, Jennifer Peterson, one of Defendant's HR managers, called Plaintiff to inform her that Defendant would not accept her religious exemption request and stated that Plaintiff would be an undue burden to the Company, since many customers were requiring vaccines and that there would be no further discussion on the matter.

62. Jennifer Peterson never addressed the fact that Plaintiff's current assignment with Defendant's customer the University of Oklahoma Health was a project that was to last 1 ½ to 2 years and did not require Plaintiff to be vaccinated.

63. Neither Jennifer Peterson nor any of Defendant's representatives ever met with Plaintiff to discuss her sincerely held religious belief as an Eastern-Rite Christian Orthodox that precluded her from taking Defendant's COVID-19 vaccine.

64. Neither Jennifer Peterson nor any of Defendant's representatives ever met with Plaintiff to discuss any possible accommodations for her sincerely held religious beliefs such as: 1.)Plaintiff keeping her current assignment with University of Oklahoma Health, since it did not require her to be vaccinated; 2.) testing before travel to customers; 3.)a list of Defendant's customers who did not require the vaccine if for some reason reassignment was necessary; 4.) assignment to those customers who did not require the vaccine mandate; and 5.) for those customers who required the vaccine for Plaintiff to submit to the customers directly her religious exemption as many hospital facilities were accepting religious exemptions for the

9.

COVID-19 vaccine.

65. Neither Jennifer Peterson nor any of Defendant's representatives ever met with Plaintiff to discuss the fact that her current primary assignment was with Defendant's customer, the University of Oklahoma Health, Oklahoma City, Oklahoma.

66. The University of Oklahoma Health did not require the COVID-19 vaccine and therefore absolutely no accommodations would have been necessary for Plaintiff from not taking the COVID-19 vaccine to continue working.

67. Plaintiff was fulfilling all of her duties at the University of Oklahoma Health and there were no conflicts with Defendant's customer.

68. Furthermore neither Defendant nor its customer, University of Oklahoma Health had to make ANY accommodations for Plaintiff to perform her daily job requirements because she not vaccinated.

69. Neither Jennifer Peterson nor any of Defendant's representatives ever identified which of its customers required vaccinations and why Plaintiff would be reassigned to another one of Defendant's customers other than her current assignment with the University of Oklahoma Health which did not mandate vaccinations and was a project expected to last 1 ½ to 2 years.

70. Defendant refused to engage in the interactive process with Plaintiff regarding her sincerely held religious beliefs and her accommodation request and only responded to Plaintiff with an obviously prescribed narrative that it would be an "undue burden" to accommodate Plaintiff's religious accommodation request.

71. Prior to Plaintiff's involuntary termination by Defendant, she was never interviewed by any of Defendant's representatives, including Jennifer Peterson, Defendant's HR

10.

representative.

72. Prior to Plaintiff's involuntary termination by Defendant, Plaintiff's religious exemption request from Defendant's COVID 19 vaccine mandate was never reviewed or discussed individually with Plaintiff by Defendant or any of Defendant's representatives.

73. Had there been any attempt for Defendant or any of its's representatives to have any discussion with Plaintiff regarding one of among many tenets of her religious beliefs, it would have become self-evident that as an Orthodox Christian, she holds a strict belief in the sanctity of life and the human body which is expressed throughout the continuum of human existence from pre-birth to post-death, rejects the practice of abortion and euthanasia, and subsequently anything that benefits from the practice of either.

74. Any vaccines that have either been developed using research including the use of stem cell lines from aborted fetuses or that directly use these lines, as did the COVID-19 vaccine that Defendant was mandating for Plaintiff to take in order for her to remain employed by them, are not permitted for her to take as an Orthodox Christian.

75. Furthermore, had there been any attempt for Defendant or any of its's representatives to have any discussion with Plaintiff regarding her sincerely held religious beliefs it would have become obvious that Plaintiff has consistently upheld her sincerely religious beliefs all throughout her adult life.

76. Neither Defendant nor any of Defendant's representatives refused to engage in any good faith communications with Plaintiff regarding her sincerely held religious accommodation requests to its COVID -19 vaccine mandate prior to her involuntary and unilateral termination of her employment with Defendant on September 30, 2021.

77. Plaintiff never asked Defendant or any of Defendant's representatives to be excused

11.

or was she ever excused from any essential function in her employment with Defendant in regards to any of its customers, especially the University of Oklahoma Health, which did not require the COVID-19 vaccine to continue working with them.

78. Plaintiff was still able to travel to Defendant's customer's site, University of Oklahoma Health and even traveled from September 14-16, 2021, her second to last week prior to Defendant's involuntary dismissal of Plaintiff from her employment.

79. The University of Oklahoma Health was Plaintiff's major and only customer requiring travel that she had been assigned to work weekly 35 hours, to whom Defendant already staffed her and was a customer of Defendant's that did not require vaccination so it would have been no burden at all to have accommodated her religious exemption request from the Defendant's COVID-19 vaccination mandate and let her continue with her employment with Defendant, Epic Systems Corporation.

80. Defendant, Epic Systems Corporation did not even meet a de minimis standard with respect to accommodating Plaintiff's religious exemption request from Defendant' COVID-19 vaccine mandate.

81. Defendant demonstrated that it never intended to grant any religious accommodation for its COVID-19 vaccine mandate.

82. Plaintiff not only suffered humiliation but also discrimination and was ultimately involuntarily and arbitrarily terminated from her employment with Defendant for exercising her religious beliefs which prohibited her from being vaccinated with the COVID 19 vaccine.

83. Plaintiff engaged in protected activity under Title VII which she was harmed as a result of Defendant's violation.

84. Defendant discriminated against Plaintiff because of her sincerely held religious

12.

beliefs.

85. Defendant's failure to provide Plaintiff with a religious accommodation harmed and humiliated Plaintiff.

86. By failing to engage minimally in the interactive process, Defendant deprived Plaintiff her due process under the law.

87. By failing to engage in the interactive process or offer any reasonable accommodation, Defendant's discriminatory actions were intentional and reckless and in violation of Title VII.

88. By failing to engage in the interactive process or offer any reasonable accommodation evidences Defendant's arbitrary violation of Title VII.

89. Plaintiff filed with the Chicago District Office-EEOC on March 24, 2022, EEOC No: 443-2022-01617.

90. On March 30, 2023, the EEOC issued the RIGHT to SUE on the matter.

## PRAYER FOR RELIEF

91. WHEREFORE, Plaintiff respectfully requests that the Court:

a. Award Plaintiff damages, including back pay, front pay, pre-judgment and post judgment interest and compensatory damages in the amount of $10,000,000 and in such amount as may be established by proofs;

b. Award Plaintiff punitive damages in the amount of $30,000,000;

c. Award Plaintiff reasonable attorney fees and costs;

d. Grant any other relief that the Court deems just, proper and equitable; and

e. Pursuant to Federal Rule of Civil Procedure 38, Plaintiff demands a jury trial on all issues which there is a right to a jury trial.

13.

## COUNT II
## Violation of Title VII, 42 U.S.C. § 2000e et seq.
### Religious discrimination-retaliation

92. Plaintiff restates and realleges foregoing paragraphs 1-89 as if set forth fully herein.

93. Plaintiff engaged in protected activity when she requested religious accommodations from Defendant's COVID-19 vaccine mandate.

94. Defendant immediately denied Plaintiff's religious accommodation on the basis of "undue burden".

95. Defendant denied Plaintiff's religious exemption request and failed to accommodate her despite the fact that the University of Oklahoma Health was Plaintiff's major  and only customer requiring travel,  as she was assigned 35 hours a week to this customer, to whom she was already staffed  and the University of Oklahoma Health  did not require vaccination.

96. It would have been no burden at all for Defendant to accommodate Plaintiff's religious exemption request  from Defendant's  COVID-19 vaccination mandate so she could continue to work at the University of Oklahoma Health.

97 . Defendant's religious animus and discrimination against Plaintiff for her sincerely held religious beliefs is evidenced in its immediate denial to Plaintiff's protected activity.

98. When shaming and humiliation didn't subdue Plaintiff into total submission to its COVID-19 vaccine mandate, Defendant resorted to the involuntary termination of her employment.

99. Defendant, Epic Systems Corporation did not even meet a de minimis standard with respect to accommodating Plaintiff's religious exemption request from Defendant' COVID-19 vaccine mandate.

14.

100. Defendant demonstrated that it never intended to grant any religious accommodation for its COVID-19 vaccine mandate.

101. Defendant's response to Plaintiff's protected activity of threatening and forcing her to forgo her religious beliefs and receive Defendant's COVID-19 vaccine mandate or face termination of her employment is evidence of Defendant's religious animus and discrimination against Plaintiff for upholding her sincerely held religious beliefs .

102. Defendant's religious animus and discrimination is evidenced by the fact that Defendant refused to accommodate Plaintiff's religious exemption request while its own client, University of Oklahoma Health, who was Plaintiff's major assignment taking up 35 hours a week and whose assignment was expected to last 1 ½ to 2 years, did not require Plaintiff to be vaccinated.

103. Defendant's religious animus and discrimination is evidenced by its spurious religious exemption process of never interviewing Plaintiff or engaging in any sort of interactive process with Plaintiff regarding her religious exemption request to Defendant's COVID-19 vaccine mandate.

104. Defendant chose to retaliate by giving Plaintiff the false choice between being vaccinated or be terminated from her employment and livelihood.

105. Plaintiff's religious beliefs and protected activity were the causes of Defendant's adverse employment action of retaliation. Defendant's hostility to requests for a religious accommodation is apparent. Defendant did not bother to engage in a good faith interactive process with Plaintiff because it never intended to provide Plaintiff with a reasonable accommodation to her religious exemption request.

106. By retaliating against Plaintiff for engaging in protected activity, Defendant has

15.

violated  Title VII which has harmed Plaintiff.

107.  Plaintiff filed with the  United States Chicago District Office-Equal Employment Opportunity Commission (EEOC) on March 24, 2022, EEOC No: 443-2022-01617.

108.  On March 30, 2023, the EEOC issued the RIGHT to SUE on the matter.

### PRAYER FOR RELIEF

109.  WHEREFORE, Plaintiff  respectfully  requests that the Court:

a.   Award Plaintiff damages, including back pay, front pay, pre-judgment and post judgment interest and compensatory damages in the amount of $10,000,000 and in such amount as may be established by proofs;

b.   Award Plaintiff punitive damages in the amount of $30,000,000;

c.   Award Plaintiff reasonable attorney fees and costs;

d.   Grant any other relief that the Court deems just, proper and equitable; and

e.   Pursuant to Federal Rule of Civil Procedure 38, Plaintiff demands a jury trial on all issues which there is a right to a jury trial.

### Count III
### Violation of the ADA, 42 U.S.C § 12101, *et seq*.
### Disability discrimination-failure to accommodate

110. Plaintiff restates and realleges foregoing paragraphs 1-109 as if set forth fully herein.

111. On September 14, 2021 Plaintiff  emailed Beth Henry, one of  Defendant's HR managers to inform her that Plaintiff has the Coronavirus, COVID-19 antibodies, Plaintiff gave Beth Henry the antibody test results and Jennifer Peterson communicated that this information would to be included in Plaintiff's medical records for her employment with Defendant.

112.  Plaintiff informed Defendant of her medical condition that she had the antibodies for the Coronavirus, COVID-19.

113. Defendant refused to engage in the interactive process with Plaintiff regarding her

16.

medical accommodation requests for her medical condition.

114. Defendant failed to make any reasonable accommodations for her medical condition.

115. Defendant violated the ADA when it failed to make any reasonable accommodations for Plaintiff's medical condition.

116. Defendant failed to provide a reasonable accommodation when it terminated Plaintiff's employment.

117. Defendant discriminated against Plaintiff because of her medical condition and disability.

118. Defendant's failure to provide a medical accommodation has harmed Plaintiff.

119. By failing to engage in the interactive process or offer any reasonable accommodations, Defendant's discriminatory actions were intentional and reckless, and in violation of the ADA.

120. Plaintiff filed with the Chicago District Office-EEOC on March 24, 2022, EEOC No: 443-2022-01617.

121. On March 30, 2023, the EEOC issued the RIGHT to SUE on the matter.

## PRAYER FOR RELIEF

122. WHEREFORE, Plaintiff respectfully requests that the Court:

   a. Award Plaintiff damages, including back pay, front pay, pre-judgment and post judgment interest and compensatory damages in the amount of $10,000,000 and in such amount as may be established by proofs;

   b. Award Plaintiff punitive damages in the amount of $30,000,000;

   c. Award Plaintiff reasonable attorney fees and costs;

   d. Grant any other relief that the Court deems just, proper and equitable; and

17.

'e.  Pursuant to Federal Rule of Civil Procedure 38, Plaintiff demands a jury trial on all issues which there is a right to a jury trial.

### Count IV
### Violation of the ADA, 42 U.S.C § 12101, *et seq.*
### Disability discrimination-retaliation

123. Plaintiff restates and realleges foregoing paragraphs 1-122 as if set forth fully herein.

124.  Plaintiff engaged in a protected activity when she informed Defendant of her medical condition and was seeking an accommodation from Defendant' COVID-19 vaccine mandate.

125.  Defendant responded by taking an adverse employment action against  Plaintiff when on August 20, 2021, Jennifer Peterson, one of Defendant's HR managers, called Plaintiff to inform Plaintiff would be an undue burden to the Company, told Plaintiff to "set her departure date and that there would be no further discussion on the matter".

126.  Defendant's response to Plaintiff's protected activity was to involuntarily and arbitrarily terminate Plaintiff's employment because she dared to challenge Defendant's COVID-19 vaccine mandate by submitting a medical exemption request which countered the Defendant's intentional and subjective medical philosophy.

127. Plaintiff's medical condition, disability and protected activity were the cause of Defendant's adverse employment action. Defendant's contempt of Plaintiff because of her medical condition is well documented.

128.  By retaliating against Plaintiff for engaging in protective activity, Defendant has violated ADA.

129.  Plaintiff filed with the  Chicago District Office-EEOC  on March 24, 2022, EEOC

18.

No: 443-2022-01617.

130. On March 30, 2023, the EEOC issued the RIGHT to SUE on the matter.

### PRAYER FOR RELIEF

131. WHEREFORE, Plaintiff respectfully requests that the Court:

a. Award Plaintiff damages, including back pay, front pay, pre-judgment and post judgment interest and compensatory damages in the amount of $10,000,000 and in such amount as may be established by proofs;

b. Award Plaintiff punitive damages in the amount of $30,000,000;

c. Award Plaintiff reasonable attorney fees and costs;

d. Grant any other relief that the Court deems just, proper and equitable; and

e. Pursuant to Federal Rule of Civil Procedure 38, Plaintiff demands a jury trial on all issues which there is a right to a jury trial.

### Count V
### WRONGFUL TERMINATION OF EMPLOYMENT

132. Plaintiff restates and realleges foregoing paragraphs 1-131 as if set forth fully herein.

133. On October 29, 2019, Plaintiff was hired by Defendant as a Project Manager and given a start date of August 3, 2020.

134. The University of Oklahoma Health was Plaintiff's major and only customer of Defendant that required her to travel, as she was assigned 35 hours a week to Defendant's customer to which she was already staffed prior to Defendant's COVID-19 vaccine mandate.

135. The University of Oklahoma Health was one of Defendant's customers that did not require vaccination so it would have not been an " undue burden" to accommodate Plaintiff's religious and/or medical exemption requests from Defendant's COVID-19

19.

vaccination mandate.

136. Defendant and all of Defendant's representatives refused to engage in good faith talks with Plaintiff regarding her religious and/or medical accommodation requests to its COVID -19 vaccine mandate prior to the involuntary and unilateral termination of her employment with Defendant on September 30, 2021.

137. Never before had the Defendant required Plaintiff to get clearance from the University of Oklahoma Health for onsite travel.

138. Never before had the University of Oklahoma Health ever notified Defendant it required clearance for Plaintiff's onsite travel.

139. No other employee of Defendant other than Plaintiff, was ever asked in the past, to disclose his or hers COVID-19 vaccination status to the University of Oklahoma Health.

140. Never before Defendant's decision to implement its humiliating and discriminatory business strategy of arbitrarily denying Plaintiff's religious and medical accommodation requests, did the University of Oklahoma Health ever ask for proof of the COVID-19 vaccination of any employee traveling onsite prior to September 10, 2021.

141. Defendant was using the University of Oklahoma Health to fabricate an arbitrary obstruction to justify denying Plaintiff's religious and medical accommodation to its COVID-19 vaccine mandate and to justify the wrongful termination of Plaintiff's employment.

142. Plaintiff never asked to be excused nor was excused from any essential function in her employment with Defendant when servicing its customer, the University of Oklahoma Health.

143. Plaintiff travelled to the Defendant's customer site, the University of Oklahoma Health her second to last week of her employment with Defendant from September 14-16, 2021 despite never providing proof of being vaccinated for COVID-19.

144. Plaintiff engaged in a protected activity when she requested her religious and medical accommodations from Defendant's COVID-19 vaccine mandate.

145. On September 30, 2021 Plaintiff was sent a departure procedure email from Defendant's representative. By 11 PM CST, Plaintiff lost access to all her work accounts.

146. Plaintiff was intentionally, summarily, involuntarily and wrongfully terminated from her employment with Defendant on September 30, 2021.

147. Plaintiff filed with the Chicago District Office-EEOC on March 24, 2022, EEOC No: 443-2022-01617.

148. On March 30, 2023, the EEOC issued the RIGHT to SUE on the matter.

## PRAYER FOR RELIEF

149. WHEREFORE, Plaintiff respectfully requests that the Court:

    a.  Award Plaintiff damages, including back pay, front pay, pre-judgment and post judgment interest and compensatory damages in the amount of $10,000,000 and in such amount as may be established by proofs;

    b.  Award Plaintiff punitive damages in the amount of $30,000,000;

    c.  Award Plaintiff reasonable attorney fees and costs;

    d.  Grant any other relief that the Court deems just, proper and equitable; and

    e.  Pursuant to Federal Rule of Civil Procedure 38, Plaintiff demands a jury trial on all issues which there is a right to a jury trial.

21.

May 26, 2023                                    Respectfully submitted,

                                                /s/ Susan S. Barron

                                                Susan S. Barron
                                                Plaintiff's attorneys


*This pleading was prepared by the undersigned and executed in accordance with Federal Rule 11.*


                                                /s/ Susan S. Barron

                                                Susan S. Barron
                                                One of Plaintiff's attorneys


Susan S. Barron
Attorney No: 6208744
*Attorney for Plaintiff*
LAW OFFICE OF SUSAN S. BARRON, P.C.
One Northfield Plaza,
Suite 300 Northfield, IL 60093
(847)441-8135 vm,  (847)441-8136 fax
email susansbarron@gmail.com

                                        22.