UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
Eastern Division

CAROLINE T. RETZIOS, )
)
        *Plaintiff,* )
v. ) Civil Action No: 1:23-cv-3338
) Jury Trial Demanded
EPIC SYSTEMS CORPORATION, )
)
        *Defendant.* )

### PLAINTIFF'S RESPONSE MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION TO COMPEL ARBITRATION OR IN THE ALTERNATIVE TO STAY THE MATTER UNTIL ARBITRATION OCCURS

Plaintiff, Caroline T. Retzios, hereinafter referred to as "Retzios", by and through her one of her attorneys, Susan S. Barron, Law Office of Susan S. Barron P.C., respectfully submits the following Memorandum in Opposition to Defendant's, Epic Systems Corporation, hereinafter referred to as "Epic" Motion to Compel Arbitration of all claims that Retzios pleads against Epic in this matter.

### INTRODUCTION

The recent and timely United States Supreme Court in a 9 to 0 decision, *Groff v. DeJoy, Postmaster General*, No: 22-174, is central to this case. The Court held that showing " more than a *de minimis cost*", as that phrase is used in common parlance, is not sufficient to establish "undue hardship" under Title VII. The Court stated that "undue hardship" is shown when a burden is substantial in the overall context of employer's business. The Court went further to state that Title VII requires that an employer must " reasonably accommodate" an employee's practice of religion, not merely that it assess the reasonableness of a particular possible accommodation or accommodations. *Groff v. DeJoy, Postmaster General*, No: 22-174, Argued April 18, 2023-Decided June 29, 2023. Epic's denial of Retzios' religious accommodation request from its COVID-19 vaccine mandate is in clear violation of unambiguous law.

Retzios agreed to an Arbitration Agreement that dealt with common routine administrative and employment issues such as: health insurance coverage, wages, hours, vacation leave, travel etc. Retzios, a young women of child bearing age, did **not** agree, nor could ever conceive, that Epic after the fact would presume to impose and mandate, at the uncompromising whim of Epic management, personal irreversible medical treatments and religious behavior. Epic imposed novel requirements after the fact and now falsely asserts these are "covered claims" in the Arbitration Agreement. Therefore, submitting this matter to arbitration is barred by the principles of promissory estoppel, lack of mutuality, illusory promise, waiver and established principles of contract law.

Epic's Motion must be denied because the parties are not bound to the Arbitration Agreement that was allegedly attached to the December 21, 2020 Employee Stock Award Agreement. Furthermore, the types of controversies alleged in the Complaint are matters for the Court to decide.

## STATEMENT OF UNDISPUTED FACTS

On October 29, 2019, Retzios was hired by Epic as a Project Manager and given a start date of August 3, 2020. *See* Declaration of Caroline T. Retzios ¶ 3. On October 29, 2019, Retzios electronically signed Epic Systems Corporation Employment Agreement. *Id.* ¶ 4. The October 29, 2019 Epic Systems Corporation Employment Agreement has an attached March 29, 2016 Mutual Arbitration Agreement Regarding Wages and Hours. *Id.* ¶ 4.

The relevant sections of the March 29, 2016 Arbitration Agreement are the following:

Section Agreement to Arbitrate states in part:

> Epic Systems Corporation ("Epic") and I agree to use binding arbitration, instead of going to court for any " covered claims" that arise or have arisen between me and Epic, its related and affiliated companies, and/or any current or former employee of Epic or a related or affiliated company. **I understand that acceptance of employment with Epic is deemed to be acceptance of this Agreement to Arbitrate.**

Section Claims not Covered by this Agreement states in part:

2.

> Covered claims under this Agreement **do not include claims alleging discrimination, harassment, or retaliation.** Also excluded from this agreement are any claims that cannot be required to be arbitrated as a matter of law. I also understand that I am not barred from filing a claim or charge with a governmental administrative agency, such as National Labor Relations Board or Equal Employment Opportunity Commission or from filing a workers' compensation or unemployment compensation claim with respect to covered claims, **though I am giving up the opportunity to recover monetary amounts from such governmental agency related claims** (e.g., NLRB or EEOC) and **would instead be able to pursue a claim or monetary amounts through arbitration.** I also understand that if a third party seeks to have Epic garnish my wages, I may be subject to third part garnishment proceedings court, even though such a dispute concerns my wages. [Italics added]

Section Modifications and Agreements states in part:

> **I understand and agree that Epic may change or terminate this agreement after giving me 90 days written or electronic notice.** Any change or termination will not apply to a pending claim. [Italics added]

Retzios began her employment with Epic at their Verona, Wisconsin location on or about August 3, 2020. *Id.* ¶ 7. While employed by Epic, Retzios' last employment title was one of Project Manager at the project assignment of OU Health (Oklahoma University), Oklahoma City, Oklahoma. *Id.* ¶ 8.

On June 18, 2020 Retzios electronically signed another Epic Systems Corporation Employment Agreement. *Id.* ¶ 10. The June 18, 2020 Epic Systems Corporation Employment Agreement had attached a June 15, 2020 Mutual Arbitration Agreement. *Id.* ¶ 11. Retzios never received ANY notice from Epic of any change or termination of the March 29, 2016 Arbitration Agreement which was attached to the October 29, 2019 Epic Corporation Employment Agreement, the time in which she agreed to start working for Epic. *Id.* ¶ 12.

The relevant sections of the June 15, 2020 Mutual Arbitration Agreement are the following:

Section I Agreement to Arbitrate states in part:

> Epic Systems Corporation ("Epic") and I agree to use binding arbitration, instead of going to court, for any "Covered Claims" that arise or have arisen between me and Epic, its related and affiliated companies or successors, and/or any current or former director, officer, manager or employee of Epic or a related or affiliated company or successor. Covered Claims are, unless expressly excluded below, any statutory or common law legal claims, asserted or unasserted, that relate to or arise out of my employment or the termination of my employment. I understand that acceptance of employment with Epic, or any entity related to or affiliated with Epic, is deemed to be acceptance of this

Agreement to Arbitrate. I understand and agree that arbitration is the only litigation forum for resolving Covered Claims, and that both Epic and I are waiving the right to a trial before a judge or jury in federal or state court in favor of arbitration. The arbitrator shall have the authority to award the same damages and other relief that would have been available in court pursuant to applicable law. The arbitrator shall follow the rules of law of the state which is the employee's principal place of work, any applicable Federal law, and the rules as stated in this agreement. The arbitrator shall have the authority to grant any remedy or relief that the arbitrator deems just and equitable and which is authorized by and consistent with applicable law, including applicable statutory or other limitations on damages.

Section IV Claims not Covered by this Agreement states in part:

Covered Claims under this agreement do not include claims for employee benefits that are subject to dispute resolution procedures set forth in an applicable Epic ERISA plan. Also excluded from this agreement are any claims that cannot be required to be arbitrated as a matter of law. If I am employed in the State of California, claims under the California Private Attorney General Act of 2004 ("PAGA") are excluded to the extent required by California law. Covered Claims cannot be joined with any excluded claims unless all parties agree. **Covered Claims also do not include claims for workers' compensation or unemployment compensation. I also understand that I am not barred from filing a claim or charge with a governmental administrative agency, though, with respect to Covered Claims, I am giving up the opportunity to recover monetary amounts from any such governmental agency related claim and would instead be able to pursue a claim for monetary amounts through arbitration**. I also understand that if a third party seeks to have Epic garnish my wages, I may be subject to third-party garnishment proceedings in court, even though such a dispute concerns my wages and therefore has some relationship to my employment. Nothing in this agreement prohibits me or Epic from seeking emergency or temporary injunctive relief in a court of law in accordance with applicable law (however, after the court has issued a ruling concerning the emergency or temporary injunctive relief, Epic and I are required to submit the dispute to arbitration pursuant to this agreement). [Italics added]

Section IX Modifications and Amendments states in part:

Epic and I may enter into a revised agreement in writing with immediate effect if signed by both parties. **In addition, I understand and agree that Epic may change or terminate this agreement after giving me 90 days written or electronic notice**, but such change or termination will not apply to a pending claim, or to any claim that accrued or was known to me prior to the amendment, except as may be required by applicable law. [Italics added]

Retzios never received ANY notice from Epic of any change or termination of the June 15, 2020 Arbitration Agreement which was attached to the June 18, 2020 Employment Agreement. *Id.* ¶ 12. Retzios' work performance was always exceptional and resulted in her being offered a promotion and a pay increase. *Id.* ¶ 13.

4.

On or about December 21, 2020, Retzios elected to receive Epic stocks shares in lieu of a pay raise bonus. *Id.* ¶ 14. On December 21, 2020, Retzios signed the December 21, 2020 Stock Award Agreement. An Arbitration Agreement was attached as Annex 3. *Id.* ¶ 15.

The relevant sections of the Arbitration Agreement Annex 3 attached to the December 21, 2020 Stock Award Agreement are the following:

> Section I. <u>Agreement to Arbitrate</u> states in part:
>
> Epic Systems Corporation ("Epic") and I agree to use binding arbitration, instead of going to court, for any "Covered Claims" that arise or have arisen between me and Epic, its related and affiliated companies or successors, and/or any current or former director, officer, manager or employee of Epic or a related or affiliated company or successor. Covered Claims are, unless expressly excluded below, any statutory or common law legal claims, asserted or unasserted, that relate to or arise out of my employment or the termination of my employment. **I understand that acceptance of employment with Epic, or any entity related to or affiliated with Epic, is deemed to be acceptance of this Agreement to Arbitrate.**
>
> **I understand and agree that arbitration is the only litigation forum for resolving Covered Claims, and that both Epic and I are waiving the right to a trial before a judge or jury in federal or state court in favor of arbitration.**
>
> Section IV. <u>Claims not Covered by this Agreement</u> states in part:
>
> Covered Claims under this agreement do not include claims for employee benefits that are subject to dispute resolution procedures set forth in an applicable Epic ERISA plan. Also excluded from this agreement are any claims that cannot be required to be arbitrated as a matter of law. If I am employed in the State of California, claims under the California Private Attorney General Act of 2004 ("PAGA") are excluded to the extent required by California law. Covered Claims cannot be joined with any excluded claims unless all parties agree. Covered Claims also do not include claims for workers' compensation or unemployment compensation. I also understand that **I am not barred from filing a claim or charge with a governmental administrative agency, though, with respect to Covered Claims, I am giving up the opportunity to recover monetary amounts from any such governmental agency related claim and would instead be able to pursue a claim for monetary amounts through arbitration**. I also understand that if a third party seeks to have Epic garnish my wages, I may be subject to third-party garnishment proceedings in court, even though such a dispute concerns my wages and therefore has some relationship to my employment. Nothing in this agreement prohibits me or Epic from seeking emergency or temporary injunctive relief in a court of law in accordance with applicable law (however, after the court has issued a ruling concerning the emergency or temporary injunctive relief, Epic and I are required to submit the dispute to arbitration pursuant to this agreement). [Italics added]

Section IX. Modifications and Amendments states in part:

> Epic and I may enter into a revised agreement in writing with immediate effect if signed by both parties. **In addition, I understand and agree that Epic may change or terminate this agreement after giving me 90 days written or electronic notice,** but such change or termination will not apply to a pending claim, or to any claim that accrued or was known to me prior to the amendment, except as may be required by applicable law. [Italics added]

On March 15, 2021 Epic announced that COVID-19 vaccines were available to employees and surveyed employees for interest in getting vaccinated. *Id.* ¶ 20. Retzios responded to Epic's survey by selecting she was not interested in taking the COVID-19 vaccine. *Id.* ¶ 21. Epic added this information to Retzios' internal employment file. *Id.* ¶ 22. On August 18, 2021, Retzios emailed her religious exemption request from taking Epic's COVID-19 vaccine mandate to Beth Henry, Epic's representative. *Id.* ¶ 23. On August 20, 2021, Jennifer Peterson, one of Epic's HR managers, called Retzios to inform her that Epic would not accept her religious exemption request and stated that Retzios would be an undue burden to the Company, since many customers were requiring vaccines and that there would be no further discussion on the matter. *Id.* ¶ 24.

On September 14, 2021 Retzios emailed Beth Henry, one of Epic's HR managers to inform her that Retzios has the Coronavirus, COVID-19 antibodies. *Id.* ¶ 25. Retzios gave Beth Henry the antibody test results and Jennifer Peterson communicated that this information would to be included in Retzios' medical records for her employment with Epic. *Id.* ¶ 26.

On September 30, 2021, a Preservation of Evidence Demand was issued on behalf of Retzios to Epic. *Id.* ¶ 27. On September 30, 2021, Retzios lost all access to her work accounts and was terminated from her employment with Epic because Epic denied her religious and medical exemption from Defendant's COVID-19 vaccine mandate. *Id.* ¶ 28.

Soon thereafter Retzios filed a complaint with Wisconsin Department of Workforce Development, Unemployment Insurance Division. *Id.* ¶ 29. The Wisconsin Department of

Workforce Development, a governmental agency, entered a finding that Retzios was discharged not for misconduct or substantial fault and awarded Retzios unemployment compensation. *Id.* ¶ 30.

Retzios filed with the United States Chicago District Office-Equal Employment Opportunity Commission (EEOC) on March 24, 2022, EEOC No: 443-2022-01617. *Id.* ¶ 31. On March 30, 2023, the EEOC issued the RIGHT to SUE on the matter. *Id.* ¶ 32.

## **LEGAL AUTHORITY**

Section 2 of the Federal Arbitration Act, 9 U.S.C. Ch. 2 places arbitration agreements on an equal footing with other contracts. *Rent-A-Center, West, Inc., v Jackson,* 561 U.S 63, 130 S. Ct. 2772, (2010) citing *Buckeye Check Cashing Inc. v. Cardegna,* 546 U.S. 440, 443, 126 S. Ct. 1204, 163 L.Ed. 2d 1038 and requires courts to enforce them according to their terms, *Volt Information Sciences, Inc v Board of Trustees of Leland Stanford Junior Univ.* 489 U.S. 468, 478, 109 S.Ct. 1248, 103 L. Ed, 2d 488, "save upon such grounds as exist at law or in equity for the revocation of any contract" § 2.

There are two types of validity challenges under § 2: One " challenges specifically the validity of the agreement to arbitrate and "the other challenges the contract as a whole" . *Rent-A-Center, West, Inc., v Jackson,* 561 U.S 63, 130 S. Ct. 2772, (2010) citing *Buckeye Check Cashing Inc. v. Cardegna,* 546 U.S. 440, 444, 126 S. Ct. 1204, 163 L.Ed. 2d 1038. Only the first is relevant to a court's determination of an arbitration agreement's enforceability. *Rent-A-Center, West, Inc., v Jackson,* 561 U.S 63, 130 S. Ct. 2772, (2010) citing *Prima Paint Corp v. Flood & Conklin Mtg. Co.,* 388 U.S. 395. 403-404, 87 S.Ct 1801, 18 L.Ed 2d 1270. The federal court must consider the challenge before ordering compliance with the agreement under §4. *Rent-A-Center, West, Inc., v Jackson,* 561 U.S 63, 130 S. Ct. 2772, (2010).

The Arbitration Agreement which was annexed to the December 21, 2020 Stock Award Agreement is unenforceable for numerous reasons. As such, the unenforceability of the Arbitration Agreement Annexed to the December 21, 2020 Stock Award Agreement prevents compelling this matter to arbitration, dismissing the matter or in the alternative, staying these proceedings as to Retzios' claims against Epic until such arbitration can occur.

7.

# LEGAL ARGUMENT

I. **THE ARBITRATION AGREEMENT WHICH WAS ANNEXED TO THE DECEMBER 21, 2020 STOCK AWARD AGREEMENT IS INVALID, UNENFOREABLE AND NON BINDING.**

Arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed to submit. *Steelworkers v Warrior & Gulf Nav. Co.* 363 U.S. 574, 582 (1960). The Arbitration Agreement which was annexed to the December 21, 2020 Stock Award Agreement is unenforceable and nonbinding because of the affirmative defenses of promissory estoppel, illusory promise, and waiver. Furthermore, the legal doctrine of conflicts of law prevent this Court from denying Retzios' litigation of Epic's discriminatory, retaliatory and involuntary termination of Retzios' employment.

  A. *Promissory Estoppel Precludes the Court From Enforcing the Arbitration Agreement and Therefore the Court Must Retain Jurisdiction Over the Matter.*

The legal doctrine of promissory estoppel precludes the enforcement of any of the Arbitration Agreements, including but not limited to the Arbitration Agreement Annexed to the December 21, 2020 Stock Award Agreement. The elements of promissory estoppel are 1.) an unambiguous promise, 2.) reliance on the promise, 3.) reliance was expected and foreseeable, and 4.) detrimental reliance on the promise occurred. *Wigod v. Wells Fargo Bank*, NA, 673 F. 3d 547 (7th Cir 2012). On October 29, 2019, Retzios was hired by Epic as a Project Manager and given a start date of August 3, 2020. *See* Declaration of Caroline T. Retzios ¶ 3. On October 29, 2019, Epic gave an unambiguous promise to Retzios, a young woman of child-bearing age, that her employment with Epic would not require her to abrogate her religious tenets and potentially abdicate her right to make her own medical decisions and put her health and life in jeopardy. *Id.* ¶ 5. Retzios relied upon this promise and on October 29, 2019 and she electronically signed Epic Systems Corporation Employment Agreement. *Id.* ¶ 6. Retzios' reliance upon Epic's promise that her employment with Epic would not require her, being a young woman of child bearing age, to abrogate her religious tenets and abdicate her right to make her own medical decisions and potentially put her health and life in jeopardy was expected and foreseeable. Detriment occurred to Retzios because of her reliance on Epic's promise that she would work in

8.

a normal business work environment with normal and reasonable work expectations. Retzios never agreed that by accepting and her continued employment with Epic would allow Epic to require her, being a young woman of child bearing age, to abrogate her religious tenets and abdicate her right to make her own medical decisions and put her health and life in jeopardy. *Id.* ¶ 5. No reasonable, rational person being a citizen of and living in the United States of America, would agree to any employer within the United States demanding this. If Retzios had even the thought that Epic would conceivably require that she renounce her sincerely held religious beliefs and potentially subject herself to bodily harm, she would have never even considered employment with that entity.

The relevant sections of the Arbitration Agreement Annex 3 attached to the December 21, 2020 Stock Award Agreement are the following.

> Section I. <u>Agreement to Arbitrate</u> states in part:
>
>> Epic Systems Corporation ("Epic") and I agree to use binding arbitration, instead of going to court, for any "Covered Claims" that arise or have arisen between me and Epic, its related and affiliated companies or successors, and/or any current or former director, officer, manager or employee of Epic or a related or affiliated company or successor. Covered Claims are, unless expressly excluded below, any statutory or common law legal claims, asserted or unasserted, that relate to or arise out of my employment or the termination of my employment. **I understand that acceptance of employment with Epic, or any entity related to or affiliated with Epic, is deemed to be acceptance of this Agreement to Arbitrate.**
>>
>> **I understand and agree that arbitration is the only litigation forum for resolving Covered Claims, and that both Epic and I are waiving the right to a trial before a judge or jury in federal or state court in favor of arbitration.**

Retzios relied upon Epic's representation that by accepting and continuing her employment with Epic, she would work in a normal business work environment with normal and reasonable work expectations. *Id.* ¶ 16 . Retzios relied upon Epic's representation that by accepting and continuing her employment with Epic, her religious tenets would not be a factor and she would not be expected to surrender her religious beliefs which is a liberty and right guaranteed for all Americans since the inception of this Country. *Id.* ¶ 17. Furthermore, Retzios relied upon Epic's

9.

representation that by accepting continued employment with Epic she would not be required to sacrifice her health. *Id.* ¶ 18. Retzios had the common and reasonable expectation that by working and continuing to work for Epic she would not need to sacrifice her health and possibly risk death in order to satisfy Epic's business expectations. The legal doctrine of promissory estoppel precludes the enforcement of the Arbitration Agreement Annexed to the December 21, 2020 Stock Award Agreement.

### B. *The Arbitration Agreement is Based on an Illusory Promise, Unenforceable and Therefore the Court Must Retain Jurisdiction Over the Matter.*

An illusory promise is one that the courts will not enforce. When only one party is bound to perform the promise is illusory due to the lack of mutuality rendering the contract unenforceable. An illusory promise, one which "by its terms makes performance entirely optional with the promisor," cannot form the basis for a valid contract, *Penn v. Ryan's Family Steak Houses, Inc.* 269 F. 3d 753 Court of Appeals (7th Cir 2001) citing *Pardieck v. Pardieck* 676 N.E. 2d 359, 364 n, 3 (Ind. Ct. App. 1977) because "a contract is unenforceable if it fails to obligate [one party] to do anything." *Indiana-American Water Co. v. Town of Seelville*, 698 N.E. 2d 1255, 1260 (Ind. Ct. 1998).

Epic made significant changes and modifications to each of the three Arbitration Agreements. Additionally, each of the Arbitration Agreements allowed Epic to change or terminate the Arbitration Agreement only after giving Retzios 90 day written or electronic notice. Epic failed to give Retzios 90 day written or electronic notice of ANY change to ANY of the three Arbitration agreements. *Id.* ¶¶ 9, 12, and 19.

The March 29, 2016 Arbitration Agreement *Id.* ¶ 4.

Section Modifications and Agreements states in part:

> **I understand and agree that Epic may change or terminate this agreement after giving me 90 days written or electronic notice.** Any change or termination will not apply to a pending claim. [Italics added]

The June 15, 2020 Mutual Arbitration Agreement *Id.* ¶ 10.

Section IX Modifications and Amendments states in part:

> Epic and I may enter into a revised agreement in writing with immediate effect if signed by both parties. **In addition, I understand and agree that Epic may change or terminate this agreement after giving me 90 days written or electronic notice**, but such change or termination will not apply to

10.

a pending claim, or to any claim that accrued or was known to me prior to the amendment, except as may be required by applicable law. [Italics added]

Arbitration Agreement Annex 3 to the December 21, 2020 Stock Award Agreement *Id.* ¶ 15.

    <u>Section IX. Modifications and Amendments</u> states in part:

> Epic and I may enter into a revised agreement in writing with immediate effect if signed by both parties. **In addition, I understand and agree that Epic may change or terminate this agreement after giving me 90 days written or electronic notice,** but such change or termination will not apply to a pending claim, or to any claim that accrued or was known to me prior to the amendment, except as may be required by applicable law. [Italics added]

    The Declaration of Jennifer Peterson, who was Epic's HR Manager at all relevant times under the causes of action under the Complaint, does not attest that ANY notice was given to Retzios for any change of ANY Arbitration Agreement, including but not limited to the Arbitration Agreement Annexed to the December 21, 2020 Stock Award Agreement. (Refer to Epic's Declaration of Jennifer Peterson).

    Furthermore, Epic on September 30, 2021 was issued a preservation of Evidence Demand by Retzios' attorney. Epic was made aware that litigation was pending over the discriminatory, retaliatory and involuntary termination of Retzios' employment and was admonished to preserve all electronic and hard copies of records, data documents in its possession, which would have included all of the arbitration agreements and any 90 written or electronic notices of changes to each of the arbitration agreements. *Id.* ¶ 27. Epic did not include any written or electronic changes to the arbitration agreement, if such existed, because they were required under the Preservation of Evidence Demand to do so.

    Epic is now trying to bind Retzios' discriminatory and retaliatory causes of action under the Complaint to arbitration when in fact it failed to provide 90 day written or electronic notice to Retzios of ANY changes to ANY of the arbitration agreements. Mutuality is essential to any contract and mutuality is completely lacking in the Arbitration Agreement Annexed to the December 21, 2020 Stock Award Agreement. Epic is claiming Retzios was bound to perform under the Arbitration Agreement Annexed to the December 21, 2020 Stock Award Agreement, yet Epic failed to provide ANY 90 day written or electronic notice to Retzios of ANY changes made to the promise to arbitrate, and the promise in the Arbitration Agreement was illusory. Therefore the Arbitration Agreement Annexed to the December 21, 2020 is unenforceable.

If the Court is inclined to enforce any of the arbitration agreements, then only the March 29, 2016 Arbitration Agreement should be enforced. This is because the March 29, 2016 Arbitration Agreement is the first arbitration agreement that Retzios signed and all subsequent arbitration agreements had major modifications made to them, for which she was not given notice. *Id.* ¶ ¶¶ 9, 12, and 19. The March 29, 2016 Arbitration Agreement states in part:

<u>Section Claims not Covered by this Agreement</u> states in part:

> Covered claims under this Agreement **do not include claims alleging discrimination, harassment, or retaliation.**

Clearly claims of discrimination, harassment and retaliation are excluded, therefore all causes of action under the Complaint are excluded from arbitration.

### C. *Epic Waived its Alleged Right to Arbitration*.

Epic's characterization that Retzios has refused to arbitrate is incorrect. In fact, the accurate characterization is that Epic waived its right to arbitrate when it defended its discriminatory and retaliatory discharge of Retzios' employment before two nonarbitral tribunals and never objected even when Retzios was awarded unemployment compensation from the state of Wisconsin, which is clearly prohibited in the arbitration agreement.

Arbitration Agreement Annex 3 to the December 21, 2020 Stock Award Agreement *Id.* ¶ 15.

<u>Section IV. Claims not Covered by this Agreement</u> states in part:

> Covered Claims also do not include claims for workers' compensation or charge with a governmental agency, though, with respect to covered claims, **I am giving up the opportunity to recover monetary amounts from an such governmental agency, a related claim and would instead be able to recover money amounts through arbitration.** [Italics addrd]

An election to proceed before a nonarbitral tribunal for the resolution of a contractual dispute is a presumptive waiver of the right to arbitrate. *Cabintree of Wisconsin, Incorporated v. Kraftmaid Cabinetry, Incorporated* 50 F. 3d 388 (7th Cir 1995). Failure to move promptly for arbitration is powerful evidence that they made their election against arbitration. Waiver is the intentional relinquishment or abandonment of a known right. *Morgan v. Sundance*, 142 S.Ct. 1708 citing *United States v. Olano* 507 U.S. 725, 733, 113 S. Ct. 1770, 123 L. Ed. 2nd 508 (1993).

Epic was put on notice by Retzios of pending litigation on September 30, 2021 through a

12.

NOTICE OF PENDING LITIGATION-EVIDENCE PRESERVATION DEMAND. *See* Declaration of Caroline T. Retzios *Id.* ¶ 27. Epic's Legal Department received the NOTICE OF PENDING LITIGATION on behalf of Retzios. At that point, Epic was not only made aware that it was to preserve all records, data, documents, devices pertaining to Epic's denial, non-accommodation of Retzios' religious exemption request, involuntary employment termination but also that litigation was pending. *Id.* ¶ 27.

On September 30, 2021, Retzios lost all access to her work accounts and was terminated from her employment with Epic. *Id.* ¶ 28. Soon thereafter Retzios filed a complaint with Wisconsin Department of Workforce Development, Unemployment Insurance Division. *Id.* ¶ 29. The Wisconsin Department of Workforce Development, a governmental agency made a finding that Retzios was discharged not for misconduct or substantial fault and awarded Retzios unemployment compensation. Epic never brought up arbitration and never objected to the award of unemployment compensation, which was prohibited under the Arbitration Agreement from the Wisconsin Department of Workforce Development, a governmental agency.

Soon after receiving a finding and receiving unemployment compensation, Retzios filed with the United States Chicago District Office-Equal Employment Opportunity Commission (EEOC) on March 24, 2022, EEOC No: 443-2022-01617. *Id.* ¶ 31. Epic filed their response to the EEOC Complaint and never once brought up the fact there was an arbitration agreement or that any monetary award by the EEOC was prohibited because of an arbitration agreement. On March 30, 2023, the EEOC issued the RIGHT to SUE on the matter. *Id.* ¶ 32. The matter was with the EEOC for 371 days and never once did Epic communicate that an arbitration agreement was in effect or objected to the governmental agency involvement. Epic, as a direct consequence of its inaction waived its alleged right to arbitrate.

### D. *The U.S. District Court Only Has the Ability to Decide Which State and Which Conflict of Law to Apply and not an Arbitrator.*

The events bringing forth the causes of action in this matter occurred both in Oklahoma and

Wisconsin. On October 29, 2019, Retzios was hired by Epic as a Project Manager and given a start date of August 3, 2020. *See* Declaration of Caroline T. Retzios ¶ 3. On October 29, 2019, Retzios electronically signed Epic Systems Corporation Employment Agreement. *Id.* ¶ 4. The October 29, 2019 Epic Systems Corporation Employment Agreement has an attached March 29, 2016 Mutual Arbitration Agreement Regarding Wages and Hours. *Id.* ¶ 4. Yet, at the time that Epic involuntarily terminated Retzios from her employment, Retzios' current assignment with Epic's customer, OU Health, (Oklahoma University) was a project that was to last 1 ½ to 2 years and did not require Retzios to be vaccinated. *Id.* ¶ 8.

Epic now claims that the Arbitration Agreement Annexed to the December 21, 2020 Stock Award Agreement is binding. In determining the validity of the Arbitration Agreement, there is a conflict of law issue. Wisconsin courts treat contracts concerning employment like any other contract. *Tinder v. Pinkerton,* 305 F. 3d 728 (7th Cir 2002) citing *Ferraro v. Koelsch,* 124 Wis, 2d 154, 368 N.W. 2d 666, 671-72 (1985). This includes an employment-at-will that supplants or alters the nature of the employment relationship. *Id.* 672-73. In Wisconsin, consideration consists of either detriment to the promisor or benefit to the promisee. *Michalski v. Circuit City Stores Inc.* 177 F.3d 634, 636 (7th Cir. 1999). A promise for a promise, or the exchange of promises, is adequate consideration to support a bilateral contract. *Ferraro,* 368 N.W. 2d at 671-72. Wisconsin law considers employment-at-will to have sufficient consideration. By contrast, Oklahoma law has generally recognized the rule of contract law that the reservation of a unilateral right to cancel the entire agreement is so broad that it negates the existence of consideration and the promise is essentially empty or illusory. *Thompson v. Bar-S Foods Co.* 174 P. 567 (Okla. Supreme Ct. 2007). The Oklahoma rule that consideration is lacking regarding the universal right to cancel the entire agreement, the very definition of an at-will-employment, conflicts with Wisconsin's rule regarding adequate consideration for at-will-employment.

Undoubtedly, Retzios' employment was at-will. Section III of the Arbitration Agreement Annexed 3 to the December 21, 2020 Stock Award Agreement states:

<u>Section III. At Will Employment Unchanged by this Agreement.</u>

Nothing in this agreement changes or in any manner modifies my relationship with Epic of employment-at-will.

*Id.* ¶ 15. Both Oklahoma and Wisconsin were definitely the situs for the causes of action under the Complaint. Only the U.S. District Court and not an arbitrator, has the authority to determine which choice of law to apply in order to determine if there was consideration in Retzios' at-will-employment with Epic at OU Health, (Oklahoma University).

## II. THE ARBITRATION AGREEMENT ANNEXED TO THE DECEMBER 21, 2020 STOCK AWARD AGREEMENT IS UNENFORCEABLE, NONBINDING AND TO DISMISS OR STAY OF THE PROCEEDINGS IS INHERENTLY PREJUDICIAL.

The Arbitration Agreement Annexed to the December 21, 2020 Stock Agreement is invalid, unenforceable and nonbinding. There is zero evidence that Epic made any effort to accommodate Retzios' religious and medical accommodations. In fact, the evidence overwhelmingly shows that Epic was overtly hostile and displaced animus toward Retzios because of her sincerely held religious beliefs and medical condition. As a result, it would be inherently unjust for this Court to compel arbitration, dismiss, or stay these proceedings.

## CONCLUSION

WHEREFORE, for all the foregoing reasons, Plaintiff Retzios respectfully requests this Court to deny Defendant Epic's Motion to Compel Arbitration and dismiss this case or, in the alternative stay the case as to Retzios' claims against Epic pending completion of arbitration. Plaintiff additionally requests that this Court issue a date for Defendant to answer the Complaint and enter a discovery schedule for the completion of written and oral discovery.

July 26, 2023

Respectfully submitted,

_____
Susan S. Barron
One of Plaintiff's attorney

*This pleading was prepared by the undersigned and executed in accordance with Federal Rule 11.*

_____
Susan S. Barron
One of Plaintiff's attorney

15.

Susan S. Barron
Attorney No: 6208744
*Attorney for Plaintiff*
LAW OFFICE OF SUSAN S. BARRON, P.C.
One Northfield Plaza, Suite 300 Northfield, IL 60093
(847)441-8135 vm, (847)441-8136 fax email susansbarron@gmail.com