# Exhibit B

# EPIC SYSTEMS CORPORATION
## Employment Agreement

This document is a contract between you, a present or prospective employee of Epic Systems Corporation ("Epic"), and Epic.

Epic is in the business of creating and marketing computer software for, and providing related services to, the health care and related industries throughout the United States and elsewhere. The provisions of this agreement are important in Epic's efforts to provide quality products and services to its licensees and customers.

### 1. Contract

The provisions of this agreement are, in effect, promises you, the employee, make to Epic in consideration for entering or continuing in the employment of Epic. This agreement does not, however, include a promise of perpetual or continuing employment by Epic. All of Epic's employees are "at will" employees which means that the relationship is freely entered into by both parties and that either Epic or you, the employee, may terminate the relationship at any time, with or without cause, and with or without notice. While either you or Epic may terminate the employment relationship at any time, you are expected to provide adequate notice to Epic prior to resignation so that Epic has time to ensure proper transition of your job responsibilities. Adequate notice and the consequences of failing to provide adequate notice are described in Epic's policies and procedures book as it is modified from time to time. In the event of termination of this employment by either you or Epic, and regardless of the reason, the provisions of paragraphs 2, 3, 4, 5, 6 and 9 of this agreement shall survive the termination of employment, i.e., shall remain in effect. No person, except for the CEO or the president of Epic, has the authority to enter into an agreement for employment of you on other than an "at will" basis, and even the CEO or president may only do so in a signed writing. You should not rely on any statement by anyone to the contrary.

By signing this agreement, you agree that you will devote your full business and professional time and energies to Epic and will neither accept nor conduct any other business or professional activities while employed by Epic. As a salaried employee, you generally will receive the same amount of salary each week, no matter the number of hours you work. We are working toward a mission of improving healthcare worldwide, and your salary is designed to compensate you for all hours you work each week with the understanding that most weeks will require more than 40 hours. You agree that your salary compensates you for this, and that no overtime is due or will be paid when you work in excess of 40 hours in a week.

### 2. Confidentiality

<u>Trade Secrets and Other Confidential Information</u>. In order to conduct its business operations, Epic must maintain in secret certain trade secrets and proprietary information. These trade secrets and proprietary information include, by way of example, customer and prospect lists and identities; Epic sales strategies and sales strategies for any Epic prospect; software, software systems or details of software including computer coding in any form, methods or operation, user interfaces, details of operation or functionality, details of reports, details of screens, structure and sequence of functionality and programs, software structural design such as programming points and the Epic pyramid, system deficiencies; programming techniques; user and program documentation; development history of any software system; internal discussions or strategies relating to competitors; information regarding discussions with consultants or information from consultants; financial information about Epic, its employees or its customers; identities and talents of specific Epic employees; company records; pricing information, pricing details and strategies; and other sensitive information relating to the business of Epic which has been identified by Epic as confidential. Similar information of third parties that is in Epic's possession under an obligation of confidentiality also constitutes proprietary confidential information that you must maintain in confidence and use only in your role for Epic and only for the proper business of Epic. In case of doubt, business information of any Epic customer, prospective customer, vendor, or other third-party that you learn in the course of your employment with Epic should be considered and treated as confidential unless you are certain that the information is public.

During your employment, you agree to maintain in confidence all such trade secrets and other confidential information and to use such information and secrets only as needed in your role for Epic and only for the proper business of Epic. You further agree to never use or disclose any Epic trade secret after your employment has ended. And with regard to other confidential information that is not an Epic trade secret, you agree to not use and to maintain the confidentiality of all such information for a period of three years after your employment has ended.

<u>Customer Patients' Personal Health and Other Information</u>. Because of the nature of the computer software systems created by Epic and the need to maintain them, Epic employees may have access to the confidential and highly personal medical record, health or other sensitive or identifying information regarding the patients of Epic's customers or regarding account holders of Lucy, Epic's web-based personal health record. Some of Epic's customers may be geographically close (even in Madison), and it is possible that employees may have access to personal health information about persons with whom they are personally acquainted. It is a high priority of Epic, and an important company policy, that all such data regarding any patients of any customers and any Lucy account holders be maintained in the utmost confidence. Disclosure or use of any such information about any patient of any customer of Epic or about any Lucy account holder outside of your employment duties is absolutely forbidden and would be extremely injurious to Epic, its customers, and Epic's reputation in the health care community and would be a gross violation of personal confidential information. You not only agree to maintain such information in the utmost confidence and use the information only in your employment duties, you also are hereby given notice that violation of this covenant not only will result in immediate termination without notice or severance, but, furthermore, if you make any unauthorized disclosure of any confidential information regarding any patient or Lucy account holder or business data of any customer, you will expose yourself to the risk of legal liability for which you will not be defended by Epic. To the extent permitted by law, we may seek indemnification by you.

### 3. Inventions & Work Product

While an employee of Epic you may, in the course of your duties at Epic, make patentable inventions. You agree to promptly notify Epic of any such inventions, and you hereby assign to Epic all of your right, title, and interest in any such inventions. You agree to execute any such documents as Epic may reasonably request so as to record transfer of title to such inventions to Epic and permit the filing and prosecution of any patent application in the U.S. or in foreign countries on such inventions. You hereby waive and irrevocably assign to Epic any and all claims of any nature that you now or hereafter have for infringement of all proprietary rights assigned to Epic. Upon separation from Epic, you may not use any proprietary information related to the patentable inventions in any way whatsoever.

In the course of your duties at Epic, you may also, alone or with others, conceive of, develop, reduce to practice, or create works of authorship such as computer programs, product documentation, advertising or promotional materials, or other forms of written, graphic, or creative work ("Works of Authorship"). All Works of Authorship created while you are employed by Epic (regardless of whether they were created during or outside of normal business hours) shall be considered works for hire of Epic under the United States federal copyright laws (or any other applicable law) and the sole and complete property of Epic if (i) they are generated in conjunction with work assigned to you while you are employed by Epic, (ii) they are generated using or in the physical facilities of Epic, (iii) they are created, generated, or copied onto any computer or portion thereof which is the property of Epic, or (iv) they are generated using Epic's materials or confidential and/or proprietary information ("Epic Works of Authorship"). Regardless of whether any particular work constitutes a "work made for hire" under applicable law, you hereby assign to Epic all of your right, title, and interest to all Epic Works of Authorship.

In the event Epic Works of Authorship are created within the two (2) years following your departure ("Post-Employment Creations"), you hereby assign to Epic all right, title, and interest to such Post-Employment Creations. Works of Authorship created within the two (2) years following your departure will be presumed to be Post-Employment Creations if there is substantial overlap between your role in creating Works of Authorship at Epic and your role in creating Works of Authorship following your departure.

For a period of two (2) years following the termination of your employment (whether initiated by you or by Epic), you may not use or disclose any Epic Works of Authorship. This two-year limitation on the period during which use or disclosure of Epic Works of Authorship is prohibited does not apply to Works of Authorship generated using Epic's trade secret information; any use or disclosure of Epic's trade secret information is permanently restricted only to use as needed for the proper business of Epic.

### 4. Covenant Not To Compete

In the course of your duties at Epic, you may have frequent contact and interaction with the customers of Epic, and the relationships between Epic and its customers are significant assets of Epic which have been developed through substantial investment of time, effort, and expense. Also in the course of your duties at Epic, you will have access to information about Epic's processes, technology, products, plans and strategies, and will gain unique skills, insights, and experience in the highly competitive market in which Epic operates, all of which are very valuable to Epic and all of which would be of potential value to others. You therefore acknowledge and agree that the covenants that follow are reasonable measures to protect Epic's legitimate interests in the particular knowledge of Epic's products and procedures gained by its employees and to protect Epic's position in its market, and are acceptable to you in consideration for your employment at Epic and the opportunity to develop your skills, knowledge, and expertise. By signing this agreement, you also agree that the restraints imposed by the covenants will still permit you to find acceptable other employment in the event that you should leave Epic.

While employed by Epic, you will not service or contact, in a business context, either directly or indirectly, any customer of Epic, except in the course of performing your duties at Epic.

In addition, while employed by Epic and for a period of eighteen (18) months after the termination of your employment (whether initiated by you or by Epic), the following separate restrictions shall apply:

(a) **Direct Competitors**. You will not be employed or engaged by, whether as an employee, officer, partner, director, consultant or otherwise, or have an ownership interest in (other than the ownership of less than 1 percent of a publicly-held company), any Direct Competitor of Epic. "Direct Competitors" are those companies either (i) marketing, promoting, selling, or developing computer software or services for the health care industry that serve or could reasonably be anticipated to serve substantially similar functions as software or services marketed, promoted, sold or created by Epic ("Epic Products or Services"), or (ii) utilizing Epic's or its customers' proprietary information to compete with Epic. The companies listed on the attached Exhibit A are examples of companies that may be Direct Competitors of Epic. This provision shall not restrict you as to employment, assistance, or service in connection with products not marketed in competition with Epic, and shall not restrict employment or assistance in a role where you would not be materially competing with Epic.

(b) **New Business Enterprise or Area of Business**. You will not establish or aid others in establishing any new business enterprise or a new area of business for an existing business enterprise, in either case which would cause such enterprise to become a Direct Competitor of Epic. This provision shall not restrict you with regard to any new business enterprise or new area of business that does not serve substantially similar functions as Epic Products or Services.

(c) **Customer Contact**. You will not contact any customer or Active Prospective Customer of Epic with whom you have had contact during your last two (2) years of employment by Epic, for the purpose of either (i) attempting to sell them products or services competitive with Epic, or (ii) attempting to dissuade them from doing business with Epic. An "Active Prospective Customer" means a prospective customer which has provided to Epic a request for proposal, has a proposal from Epic, or has contacted Epic regarding Epic's products or services.

## 5. Non-interference with Employees

During your employment with Epic and for a period of two (2) years after the termination of your employment (whether initiated by you or by Epic), you will not attempt to persuade or influence any then-existing employee to terminate his or her employment with Epic or a subsidiary or affiliate of Epic. The restriction in this paragraph 5 shall apply only to employees with whom you worked in the two (2) years preceding any such attempt.

Nothing in this paragraph 5 prohibits you from attempting to persuade or influence any Epic employee to become an employee of any of Epic's subsidiary companies or to leave Epic, if doing so is within the scope of your responsibilities or authority in your role at Epic.

## 6. Employment with Customers, Consultants and Cooperative Partners

Epic expends substantial time, money and effort on the training of its new employees. In addition, as an Epic employee, you have access to Epic's customer lists and are in a position to establish relationships with Epic customers and the consulting firms and cooperative partners with whom Epic has close business relationships. Therefore, until eighteen (18) months after the termination of your employment (whether initiated by you or by Epic), you will not, without first obtaining the written consent of an Epic Human Resources Director, be employed or engaged by, assist, or serve as an officer, partner, or director, or consultant to, or discuss the terms of prospective employment with any Consultant or Cooperative Partner (as defined in Exhibit B) or any customer or Active Prospective Customer while you were employed by Epic, except to the extent such employment, engagement, or other association does not relate in any way to software (e.g., the design, development, sale, implementation, support, training or other activity involving software), competitive offerings, or services that overlap with Epic Products or Services. Epic may add new Consultants and Cooperative Partners to Exhibit B from time to time if Epic has worked closely with the new consulting firm or cooperative partner in connection with the development of Epic products, the provision of services for existing customers or bidding on projects for prospective customers. Epic's customers, Consultants, and Cooperative Partners may also contractually agree not to employ you for a certain period of time after your employment with Epic ends.

## 7. Return of Property

By signing this agreement, you agree that you will, upon termination of employment at Epic, surrender all of the following:

(1) written material or documentation regarding Epic software, programs, techniques, methodologies, procedures, policies, source code, listings, working papers, customer lists, financial information, and information related to the foregoing, including any responses to proposals, training material, sales material, manuals, and checklists.

(2) any physical embodiments of information that is proprietary to Epic, such as tapes, diskettes, photographs, slides, and so forth.

(3) any personal property of Epic, such as hardware (PCs, modems, printers, etc.), software owned by Epic, books purchased by Epic, magazines purchased by Epic, subscriptions purchased by Epic, and other property of Epic.

## 8. Maximum Commuting Distance / Tobacco-Free Policy

You understand and agree that it is a condition of your employment that you live within forty-five minutes commuting distance to your Epic work location for the entire period of your employment with Epic.

Tobacco use is not permitted anywhere on Epic property. This extends to all Epic buildings, grounds (parking lots, lawns, in cars) and includes all rental properties. Epic employees are not permitted to use tobacco at company events or during trips when in public places, including restaurants, the healthcare facility and grounds, etc. During such trips and events Epic employees should not be seen using tobacco, nor should they smell of smoke.

## 9. Irreparable Harm

You understand and acknowledge that Epic believes that breach of this agreement will result in irreparable and continuing damage to Epic for which money damages may not provide adequate relief. Accordingly, if you breach this agreement, you agree that Epic may seek and obtain injunctive relief to enforce the provisions of this agreement, and that nothing here shall prevent or inhibit Epic from seeking any other remedies available to it as well. Further, if Epic is successful in any action to enforce this agreement, you agree that Epic shall be entitled to recover its actual attorneys' fees and costs for such action.

## 10. Miscellaneous

By signing this agreement, you not only agree to its terms, but also warrant that you are not under any obligation, contractual or otherwise, which is in conflict with its terms.

This agreement is to be interpreted in accordance with the laws of the State of Wisconsin.

If any provision of this agreement is found to be invalid or unenforceable as written, the agreement shall be construed, to the extent possible, so as to render that provision enforceable, and if it cannot be so construed, its invalidity or unenforceability shall not affect the validity or enforceability of any other provisions of this agreement.

Employee

Signed: *Caroline Retzios*
DocuSigned by:
Name: Caroline Retzios
Date: 06/18/2020

*Jennifer Peterson*
**Human Resources**

## Exhibit A

## Examples of Companies that May Be Competing with Epic

Allscripts
Amazon/Amazon Web Services/Haven (healthcare area)
Apple (healthcare area)
athenahealth/Virence/GE Healthcare
Cerner
Change Healthcare/McKesson
eClinicalWorks
Google/Verily (healthcare area)
Health Catalyst
IBM (healthcare area)
InterSystems
Microsoft (healthcare area)
Meditech
NextGen Healthcare (QSI)

If you have worked outside the United States for Epic or any of its affiliated companies at any time during the prior 12 months (with the exception of short-term work supporting a go-live), the list also includes the following:

Cambio
CGI/Logica
Chipsoft
EMIS
Philips Healthcare
SAP (healthcare area)
System C
Tieto
TPP/SystmOne

This list is meant to provide examples only and is not exhaustive of all companies that may be competing with Epic, including any of their parent companies or affiliates. Epic may update these examples from time to time. Please contact EmploymentAgreements@Epic.com for the most up-to-date list.

## Exhibit B
## Epic Consultants and Cooperative Partners

Consultants or Cooperative Partners are:

Any Consultant or Cooperative Partner that has an Access Agreement with Epic. A list of these Consultants and Cooperative Partners is maintained by the Consultant Relations team and will be made available upon request.

The terms of this Agreement apply not only to the specific Consultant and/or Cooperative Partner, but also their parent companies and affiliates. Affiliates are entities that are partially or wholly owned by the Consultant and/or Cooperative Partner (subsidiaries), joint ventures involving a Consultant and/or Cooperative Partner, entities resulting from a merger involving one or more Consultants and/or Cooperative Partners, and entities that gain control of a Consultant and/or Cooperative Partner through the purchase of stock or assets. A Consultant and/or Cooperative Partner is considered to be an affiliate of such entity whether the transaction creating the affiliate is pending or completed.

# MUTUAL ARBITRATION AGREEMENT
## Version Date: June 15, 2020

I. <u>Agreement to Arbitrate.</u> Epic Systems Corporation ("Epic") and I agree to use binding arbitration, instead of going to court, for any "Covered Claims" that arise or have arisen between me and Epic, its related and affiliated companies or successors, and/or any current or former director, officer, manager or employee of Epic or a related or affiliated company or successor. Covered Claims are, unless expressly excluded below, any statutory or common law legal claims, asserted or unasserted, that relate to or arise out of my employment or the termination of my employment. I understand that acceptance of employment with Epic, or any entity related to or affiliated with Epic, is deemed to be acceptance of this Agreement to Arbitrate. I understand and agree that arbitration is the only litigation forum for resolving Covered Claims, and that both Epic and I are waiving the right to a trial before a judge or jury in federal or state court in favor of arbitration. The arbitrator shall have the authority to award the same damages and other relief that would have been available in court pursuant to applicable law. The arbitrator shall follow the rules of law of the state which is the employee's principal place of work, any applicable Federal law, and the rules as stated in this agreement. The arbitrator shall have the authority to grant any remedy or relief that the arbitrator deems just and equitable and which is authorized by and consistent with applicable law, including applicable statutory or other limitations on damages.

II. <u>Waiver of Class and Collective Claims.</u> I also agree that Covered Claims will be arbitrated only on an individual basis, and that both Epic and I waive the right to participate in or receive money or any other relief from any class, collective, or representative proceeding. No party may bring a Covered Claim on behalf of other individuals, and any arbitrator hearing my Covered Claim may not: (i) participate in or facilitate notification of others of potential Covered Claims; (ii) arbitrate any form of a class, collective, or representative proceeding; or (iii) without the consent of all the parties, combine more than one individual's Covered Claim(s) into a single case.

III. <u>At Will Employment Unchanged by this Agreement.</u> Nothing in this agreement changes or in any manner modifies my relationship with Epic of employment-at-will.

IV. <u>Claims not Covered by this Agreement.</u> Covered Claims under this agreement do not include claims for employee benefits that are subject to dispute resolution procedures set forth in an applicable Epic ERISA plan. Also excluded from this agreement are any claims that cannot be required to be arbitrated as a matter of law. If I am employed in the State of California, claims under the California Private Attorney General Act of 2004 ("PAGA") are excluded to the extent required by California law. Covered Claims cannot be joined with any excluded claims unless all parties agree. Covered Claims also do not include claims for workers' compensation or unemployment compensation. I also understand that I am not barred from filing a claim or charge with a governmental administrative agency, though, with respect to Covered Claims, I am giving up the opportunity to recover monetary amounts from any such governmental agency related claim and would instead be able to pursue a claim for monetary amounts through arbitration. I also understand that if a third party seeks to have Epic garnish my wages, I may be subject to third-party garnishment proceedings in court, even though such a dispute concerns my wages and therefore has some relationship to my employment. Nothing in this agreement prohibits me or Epic from seeking emergency or temporary injunctive relief in a court of law in accordance with applicable law (however, after the court has issued a ruling concerning the emergency or temporary injunctive relief, Epic and I are required to submit the dispute to arbitration pursuant to this agreement).

V. <u>Right to Representation.</u> Both Epic and I shall have the right to be represented by an attorney in arbitration. Neither side is entitled to its attorneys' fees except as provided for by applicable law.

VI. <u>How to File for Arbitration.</u> To file a demand for arbitration:

    1. The party desiring to pursue a Covered Claim must prepare a written demand setting forth the Covered Claim(s).

    2. The Employment Arbitration Rules & Mediation Procedures of the American Arbitration Association ("AAA") effective at the time of my filing will apply, except as modified below. The current version of the rules, as of this Version Date, can be found here: https://www.adr.org/Rules. These rules are modified by the terms of this agreement, including the following:

        a. Initiation and Administration
            (1) Epic will pay the arbitrator's fees and the arbitration filing and administrative fees provided, however, that if I initiate the arbitration, I will pay the lesser of the AAA's then current filing fee (which, as of this Version Date, is $300), or the then-current filing fee applicable in state court;
            (2) Unless I regularly worked for Epic in a home location other than within Dane County, Wisconsin, the arbitration shall take place in the state of Wisconsin, Dane County, unless the parties mutually agree to an alternative location. Absent extraordinary circumstances, the arbitration hearing shall be conducted on Epic's Verona, Wisconsin campus.
            (3) Epic and I will each have the opportunity to "rank" our preference for the appointed arbitrator from a list of nine proposed arbitrators, and the AAA will then appoint the arbitrator.

        b. Discovery
            (1) For discovery purposes only, the arbitrator, or the AAA, may consolidate similar claims filed by multiple individual employees, each on their own behalf, into a single proceeding and, when discovery has been completed, the arbitrator or AAA may no longer proceed in consolidated fashion;
            (2) Each party shall avoid broad or widespread collection, search, and production of documents, including electronically stored information ("ESI"). If compelling need is demonstrated by the requesting party, the production shall: (i) be narrowly tailored in scope; (ii) only come from sources that are reasonably accessible without undue burden or cost; (iii) be produced in a searchable format if ESI, and which is usable by the receiving party and convenient and economical for the producing party; and (iv) not require electronic metadata. Where the costs and burdens of the requested discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, and the importance of the discovery in resolving the issues, the arbitrator will deny such requests or order production on condition that the requesting party advance to the producing party the reasonable costs involved in making the production, subject to the allocation of costs in the final award;
            (3) Each party shall be entitled to only one interrogatory limited to the identification of potential witnesses, in a form consistent with Rule 33 of the Federal Rules of Civil Procedure ("FRCP");
            (4) Each party shall be entitled to only 25 requests for production of documents, in a form consistent with Rule 34 of the FRCP;
            (5) Each party shall be entitled a maximum of two (2) eight-hour days of depositions of witnesses in a form consistent with Rule 30 of the FRCP;
            (6) The arbitrator shall decide all disputes related to discovery and to the agreed limits on discovery and may allow additional discovery upon a showing of substantial need by either party or upon a showing of an inability to pursue or defend certain claims without such additional discovery;

        c. Authority and Award
            (1) The arbitrator must issue a decision in writing, setting forth in summary form the reasons for the arbitrator's determination and the legal basis therefor;
            (2) The arbitrator's authority shall be limited to deciding the case submitted by the parties to the arbitration. Therefore, no decision by any arbitrator shall serve as precedent in other arbitrations except in a dispute between the same parties, in which case it could be used to preclude the same claim from being re-arbitrated.

VII. <u>Settlement.</u> I may settle any dispute with Epic at any time without involvement of the arbitrator.

VIII. <u>Confidentiality.</u> Arbitration proceedings are private and confidential, and the parties and the arbitrator shall be empowered to maintain the private and confidential nature of the arbitration proceeding, testimony, hearing and award. The arbitrator must allow persons to attend the hearing who have a direct role or interest in the hearing, but shall have the authority to safeguard privacy and confidentiality such as by excluding non-essential persons from the hearing, and by issuing

orders to protect the confidentiality of proprietary information, trade secrets or other sensitive information. This confidentiality provision shall not restrain or prohibit a party from investigating, preparing for, or presenting or defending against Covered Claims, and does not apply to a judicial challenge to or enforcement of an award, or to disclosures required or authorized by law or judicial decision.

IX. <u>Modifications and Amendments.</u> Epic and I may enter into a revised agreement in writing with immediate effect if signed by both parties. In addition, I understand and agree that Epic may change or terminate this agreement after giving me 90 days written or electronic notice, but such change or termination will not apply to a pending claim, or to any claim that accrued or was known to me prior to the amendment, except as may be required by applicable law.

X. <u>Enforceable By Intended Beneficiaries.</u> Epic's related or affiliated companies and successors, as well as current or former directors, officers, managers and employees, are all intended beneficiaries of this agreement and, as such, may fully enforce the terms of this agreement.

XI. <u>Savings Clause & Conformity Clause.</u> If any provision of this agreement is determined to be unenforceable or in conflict with a mandatory provision of applicable law, it shall be construed to incorporate any mandatory provision, and/or the unenforceable or conflicting provision shall be automatically severed and the remainder of the agreement shall not be affected. Provided, however, that if the Waiver of Class and Collective Claims is found to be unenforceable, then any claim brought on a class, collective, or representative action basis must be filed in a court of competent jurisdiction, and such court shall be the exclusive forum for such claims.

XII. <u>Controlling Law.</u> I agree that this agreement is made pursuant to, and shall be governed under, the Federal Arbitration Act.

Employee

Signed: *Caroline Retzios*
Name: Caroline Retzios
Date: 06/18/2020

*Jennifer Peterson*
**Human Resources**